UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                       Case No. 11-13603; 07-20303

BRIAN BROWN,                          HONORABLE AVERN COHN

    Defendant-Petitioner.

_____/

**MEMORANDUM AND ORDER
DENYING PETITIONER'S MOTION TO VACATE SENTENCE (Doc. 78)
AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

I. Introduction

This is a _pro se_ motion to vacate sentence under 28 U.S.C. § 2255. Petitioner, Brian Brown (Brown), contends that the 108 month sentence imposed on him following his guilty plea to conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 was in violation of his constitutional rights. Specifically, Brown contends that he was deprived of his Sixth Amendment right to counsel because his counsel informed him that he would receive a maximum sentence of 36 months and failed to make objections at sentencing. For the reasons that follow, the motion will be denied.[1]

---

[1] Brown also requested an evidentiary hearing. However, the motion papers, together with the files and record, "conclusively show that Defendant is entitled to no relief." 28 U.S.C. § 2255; _see also_ Rule 4(b), 28 U.S.C. § 2255 Rules. Therefore, the motion may be resolved without an evidentiary hearing. United States v. Johnson, 327 U.S. 106, 111 (1946); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1986).

II.  Background

An investigation of drug trafficking activity in Clinton Township, Michigan revealed that Brown was a dealer in drugs.  As part of the investigation, officers intercepted telephone calls between various individuals in the group–including Brown and his supplier, William Hunter.  Brown frequently appeared on the wire discussing his drug dealing operation. (Doc. 45: Government Sentencing Memorandum at 3).  As the investigation came to a conclusion, several search warrants were executed, including one at Brown's house.  That search revealed three scales, a razor and mirror containing an unknown white substance, and two handguns.  (Doc. 45: Government Sentencing Memorandum at 3-4; Presentence Investigation Report (PSR) at ¶ 9).

Following the end of the wiretap investigation and execution of the search warrants, Hunter, who faced charges but was eventually released on bond pending trial, sought the assistance of Otis McCary in collecting an outstanding drug debt from Brown.  Specifically, Hunter told McCary that Brown owed him $22,000.  Unbeknownst to Hunter, McCary was cooperating with the FBI.  Hunter explained to McCary that he had been supplying Brown with one kilogram of cocaine per week without requiring payment because Brown had proven such a prolific distributor.  (Doc. 45: Government Sentencing Memorandum at 4-9).  Hunter in fact had given Brown one kilogram of cocaine just before the police executed the search warrant at Brown's house.  Hunter now wanted the money for that cocaine.

McCary met with Brown about the outstanding debt to Hunter.  Brown admitted that Hunter had been supplying him with "whole bricks" of cocaine for some time.  Brown told McCary that Hunter would be paid for the fronted cocaine, noting that he had

brought Hunter more than $500,000 worth of business.  Brown explained that he still had the kilogram of cocaine and that the police did not retrieve the brick during the execution of the search warrant because some of it was in his vehicle (which apparently was not searched) and the rest he snuck out of the house using his minor daughter. Brown also admitted to McCary that he was still selling drugs, even after the investigation, and would pay Hunter eventually.  (Doc. 45: Government Sentencing Memorandum at 4-9; PSR ¶ 10).

Brown and Hunter were charged together with conspiracy to distribute cocaine. Brown pleaded guilty to the charge without a plea agreement.  As part of the plea colloquy with the Court, Brown confirmed that Hunter provided him with one kilogram of cocaine per week between June 2006 and July 2007.  (Transcript of Plea Proceedings, January 31, 2008, at 10-11, attached as Exhibit A to Government's Response - Doc. 83).

Prior to sentencing, the PSR found an applicable guideline range of 135 to 168 months based upon the 12 grams of crack Brown sold the cooperating witness in February 2006, and 56 kilograms of powder cocaine (based on Brown's admissions to receiving one kilogram per week for 14 months). (PSR ¶ 11).  Brown, through counsel, filed objections to the PSR, which included objections as to the speculative nature of the evidence regarding the amount of cocaine involved.  Brown, through counsel, also filed a sentencing memorandum, but again did not dispute the drug amount, or the inclusion of the crack in the calculation of the offense level.  (Doc. 44: Defendant's Sentencing Memorandum).

The Court sentenced Brown to 108 months in custody, 27 months below the

guideline range in the PSR.  Brown appealed, contending that (1) his plea was not knowing, voluntary, and intelligent; and (2) his sentence was procedurally and substantively unreasonable.  The Court of Appeals for the Sixth Circuit affirmed Brown's conviction and sentence.  United States v. Brown, 391 Fed.Appx. 524, 2010 WL 3245770 (6th Cir. 2010).

.                             III.  The Law

Title 28 U.S.C. § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States. . .or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

To prevail under § 2255, petitioner must show a "fundamental defect which inherently results in a complete miscarriage of justice."  United States v. Timmreck, 441 U.S. 780, 783 (1979) (quoting, Hill v. United States, 368 U.S. 424, 428 (1962)).

In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show (1) that his counsel's performance was constitutionally deficient in that the performance "fell below an objective standard of reasonableness under prevailing professional norms" and (2) that he was prejudiced by his counsel's errors.  Magana v. Hofbauer, 263 F.3d 542, 547 (6th Cir. 2001) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).  In order to establish prejudice, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  "The

4

Strickland analysis also applies to claims of ineffective assistance of counsel involving counsel's advice offered during the plea process." Magana, 263 F.3d at 547 (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)).

IV. Analysis

A.

1.

Brown first contends that his counsel was ineffective because he allowed him to enter into an invalid plea, having promised him his sentence would be no more than 36 months. As noted above, the court of appeals fully considered and rejected Brown's challenge to his guilty plea on direct appeal. When a federal prisoner raises a claim that has been decided on direct review, he ordinarily is barred from relitigating that claim in a § 2255 proceeding. Wright v. United States, 182 F.3d 458, 467-68 (6th Cir. 1999); Oliver v. United States, 90 F.3d 177, 180 (6th Cir. 1996); see Withrow v. Williams, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring) (collecting cases). Thus, in the absence of exceptional circumstances or an intervening change in the law, a § 2255 petitioner may not revisit issues that are essentially similar to those raised in his direct appeal. Wright, supra, 182 F.3d at 467. Thus, to the extent Brown's contention– that counsel was ineffective in his advice regarding the consequences of a guilty plea– mirrors the argument considered on direct appeal, he is not entitled to relief. Brown has also failed to articulate any extraordinary circumstances or intervening change in the law that would support allowing him to relitigate this issue on collateral attack.

2.

Moreover, collateral review of a guilty plea is limited to whether the plea was

5

made voluntarily, intelligently, and knowingly.  United States v. Brace, 488 U.S. 563, 574 (1989); Bodkin v. Alabama, 395 U.S. 238, 242-43 (1969).  A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently, as determined under the totality of the circumstances.  See Brady v. United States, 397 U.S. 742, 749 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969).

Here, the Court read the indictment, and also ensured that Brown read and discussed it with his lawyer.  (Transcript of Plea Proceedings, January 31, 2008 at 6-7).  When asked, Brown correctly recited the potential 20-year penalty associated with the charge.  (Id. at 7.)  Brown asked no questions during this portion of the plea colloquy, nor showed any confusion about the charges.  Indeed, the record shows that Brown fully understood the consequences of his plea, as demonstrated by the following exchanges:

> Court: Do you know the maximum sentence for that offense under the law?
>
> Brown: Yes, sir.
>
> Court: What?
>
> Brown: 20 years.
>
> . . .
>
> Court: Do you know what the recommended guideline range for this offense is?
>
> . . .
>
> Defendant: 57 to 71 months
>
> Court: That's based on the quantity of cocaine that was involved, right?
>
> Defendant: Yes, sir.
>
> Court: And you know that's a recommendation?

    Defendant: Yes, sir.

    Court: But I'm not bound by it?

    Defendant: Yes, sir.

(Id. at 7-8).

    Moreover, as to his sentence, Brown himself suggested that his guideline range was 57-71 months but that he this range was merely a recommendation by which the court was not bound.  During the plea hearing, while Brown initially stated that the conspiracy involved just the one kilogram of cocaine that Hunter gave him on credit, he admitted just moments later–when asked by the prosecutor–that Hunter gave him one kilogram of cocaine per week for the duration of the thirteen-month conspiracy. (Id. at 10-11).  Thus, when he pleaded guilty, Brown knew the scope of the involvement to which he was admitting and that the guideline range would be determined by the amount of cocaine involved.  Thus, Brown understood the potential penalty and the factual basis for it–that Hunter provided him with one kilogram of cocaine per week for thirteen months.

    Brown, now essentially repudiates these statements made under oath.  He contends that counsel promised him a sentence of no more than 36 months.  First, it is well settled that collateral relief is not available based upon mere allegations that contradict statements a petitioner made before the Court under oath in Rule 11 proceedings.  See Blackledge v. Allison, 431 U.S. 63 (1997).  A defendant is bound by admissions made at a change of plea hearing, even in the face of some evidence contradicting those statements.  To do otherwise would condone the practice of defendants providing untruthful responses to questions during plea colloquies.  Ramos

v. Rogers, 170 F.3d 560, 566 (6th Cir.), cert. denied, 528 U.S. (1999). Where, as here, a court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986) (quoting Moore v. Estelle, 526 F.2d 690, 696–7 (5th Cir .1976) (quoting Jackson v. United States, 512 F.2d 772, 773 (5th Cir. 1975)).

Second, Brown's claim is clearly contradicted by the record. During the plea hearing, the following exchange took place;

> Court: Has anyone threatened you or forced you to plead guilty?
>
> Defendant: No, sir.
>
> Court: Has anyone made any prediction or prophesy or promise to you as to what I'm going to do?
>
> Defendant: No, sir.

(Id. at 8). Under these circumstances, Brown's claim that counsel made a "promise" of a term of 36 months is not credible and is flatly contradicted by the record. He is not entitled to habeas relief on this ground.

B.

Petitioner also argues that his counsel was ineffective for failing to object to the drug quantity to him at sentencing. As the government points out, his counsel submitted numerous objections to the PSR, including the following: there is no proof that the weapons were operational; that the evidence regarding the amounts of cocaine and money cited in the PSR was speculative, unreliable, and should not be accepted at face value; that the guideline correlation between quantity of drugs and culpability is unsupported and unsupportable. The Court found that the two-level increase for

8

possession of a gun to be inapplicable and found the applicable offense level to be 31, adopting the quantity of drugs attributed to Brown by the probation department and finding no other basis for a reduction in sentence.  (Transcript of Sentencing Hearing, December 9, 2009, at 1-2).

The fact that Brown's counsel did not again raise his objection to the drug quantity at the sentencing hearing, does not constitute ineffective assistance of counsel.  His counsel's performance was effective, although ultimately unsuccessful, in objecting to the drug quantity set forth in the PSR.  Counsel cannot be faulted for declining to object a second time during the sentencing hearing, especially in the face of the overwhelming evidence supporting the drug quantity attributable to Brown, based on Brown's own statements and those of Hunter.  In light of this evidence, counsel's performance was not deficient.  Moreover, Brown fails to demonstrate that he suffered actual prejudice as a result of any alleged error.  Brown has not established that there was a reasonable probability that, but for counsel's alleged errors, he would have gone to trial and the outcome would have been different.

## VI.  Conclusion

Brown was represented by competent counsel.  Brown has not demonstrated that he is entitled to relief under § 2255.

Furthermore, reasonable jurists would not debate the Court's assessment of Brown's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore DECLINES to grant a certificate of appealability under 28

U.S.C. § 2253(c)(2).[2]  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED.


Dated:  December 22, 2011         S/Avern Cohn
                                  AVERN COHN
                                  UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to Brian Brown, 40971039, Fairton, Federal Correctional Institution,  Inmate Mail/Parcels,  P.O. BOX 420, Fairton, NJ 08320 and the attorneys of record on this date, December 22, 2011, by electronic and/or ordinary mail.

                                   S/Julie Owens
                                   Case Manager, (313) 234-5160

---

[2] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.